IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>THEO D. COOKE,<br><br>    Defendant. | Case No. 25-00102-01-CR-W-BP |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1.  The Parties.**  The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Jeffrey P. Ray, Acting United States Attorney, Bradley Cooper, Special Assistant United States Attorney, and the defendant, Theo D. Cooke ("the defendant"), represented by Marc Ermine.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2.  Defendant's Guilty Plea.**  The defendant agrees to plead guilty to Count One of the Information charging him with a violation of 18 U.S.C. § 1344, that is, bank fraud. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which he is pleading guilty are as follows:

On or about January 27, 2023, within the Western District of Missouri and elsewhere, defendant Theo D. Cooke, with the intent to defraud, did knowingly execute, attempt to execute, and participate in a scheme and artifice to defraud a financial institution and to obtain money, funds, and credit under the custody and control of a financial institution by means of false or fraudulent pretenses, representations, and promises. Specifically, Theo D. Cooke falsely represented to Central Bank that he was D.K. and signed D.K.'s name on a promissory note for an automobile loan, and the defendant then and there well knew, he was not D.K., in violation of Title 18, United States Code, Section 1344.

From on or about January 1, 2023, through on or about May 31, 2023, the defendant admits that he completed online applications for fraudulent automobile loans through the websites of various financial institutions. As part of the scheme, the defendant used stolen identities to apply for the automobile loans and submitted fraudulent documents with the loan applications.

Cooke agrees that all court appearances and hearings related to this case will be held in the Western Division of the Western District of Missouri.

**CENTRAL BANK**

On or about January 23, 2023, the defendant admits that he completed and submitted an online consumer loan application for an automobile purchase through Central Bank. The amount of the loan request was $67,000. The defendant admits that he used the stolen identity of D.K. with D.K.'s birthday and D.K.'s social security number (SSN) to complete the loan application. The defendant also admits that he submitted fraudulent documents to support the loan application. These fraudulent documents included a fake pay stub which represented that D.K. worked for a trucking company in Springfield, Missouri and had a home address in Springfield, Missouri. Also included in the fake documents was a State of New York Certificate of Title for a 2022 Ford Bronco with VIN ending in 7086. This automobile was purported to be purchased with the proceeds of the loan. The investigation determined that the 2022 Ford Bronco with VIN ending in 7086 was for sale in New Jersey. The defendant also submitted a fraudulent Missouri- Proof of Auto Insurance Card in the name of D.K. to falsely represent to Central Bank he had auto insurance.

On or about January 27, 2023, Cooke visited a Central Bank location in Springfield, Missouri to finalize the loan. Prior to visiting the bank, Cooke admits he emailed with bank personnel purporting to be D.K. to set up a time to sign the loan documents. While at the bank, Cooke admits that he signed the loan application, a consumer security agreement, and a promissory note as D.K. Cooke also admits that he displayed a fraudulent driver's license with his picture, but the information of D.K. to Central Bank's loan officer on January 27, 2023. The loan officer verified the information on the fraudulent driver's license matched the information on the loan application. Cooke received a bank disbursement check from Central Bank for $67,000 that identified D.K. as the remitter and was made payable to Cooke's associate, T.M.

Central Bank was a financial institution doing business in the Western District of Missouri and the accounts of Central Bank were federally insured by the Federal Deposit Insurance Corporation.

D.K. is a real person who, after learning of unapproved automobile loans in his/her name, filed a Federal Trade Commission Identity Theft Report. D.K. has never lived in Missouri. In the report, D.K. confirmed that any financial or employment activity associated with Missouri is fraudulent.

## **Relevant Conduct**

### *First State Community Bank*

Cooke admits that on or about January 11, 2023, he completed and submitted a consumer loan application and security agreement through First State Community Bank's website and purported to be D.K. To complete the application, Cooke provided the SSN and date of birth of D.K. The purpose of the fraudulent loan was to purchase a 2022 Ford Bronco with VIN ending in 7086. Cooke admits that he submitted a fraudulent State of New York Certificate of Title for the 2022 Ford Bronco and a fraudulent driver's license with the loan documents. Cooke further admits the fraudulent driver's license had a picture of Cooke, but the name and address of D.K.

On or about January 12, 2023, Cooke admits he visited a First State Community Bank to obtain a check from the fraudulent automobile loan. Cooke received a check from First State Community Bank for $65,000 and listed D.K. as the remitter and was made payable to Cooke's associate, T.M.

### *UMB Bank*

Cooke admits that on or about January 18, 2023, he completed and submitted a consumer loan application requesting $67,000 through UMB Bank's website. Cooke admits that he used the identity of D.K., to include D.K.'s date of birth and SSN to complete the loan application. Cooke further admits that he submitted a fake pay stub and a fraudulent IRS Form W-2 with the loan documents that represented D.K. worked at a trucking company in Springfield, Missouri and lived in Springfield, Missouri. According to the loan documents, the purpose of the loan was to purchase a 2022 Ford Bronco with VIN ending in 7086.

Cooke further admits that on or about January 31, 2023, he visited a UMB Bank branch in Springfield, Missouri and represented he was D.K. Cooke admits he signed the loan application as D.K. and provided a fraudulent driver's license with Cooke's picture, but the personal information of D.K. Cooke received a cashier's check from UMB for $67,000 as the proceeds of the loan. The check listed D.K. as the remitter and was made payable to Cooke's associate, T.M.

### *Multipli Credit Union*

In approximately January 2023, Cooke admits that he applied for two automobile loans at Multipli Credit Union using the stolen identities of D.K. and T.M.[1] Cooke admits that he fraudulently attempted to obtain a loan as T.M. for $90,066 to purportedly purchase a 2022 GMC Yukon. The loan application was ultimately canceled by Multipli Credit Union because fraud was suspected.

### *Credit Union of America*

In or about May 2023, Cooke admits he submitted a fraudulent loan application online purporting to be R.H. for $67,000 from Credit Union of America in Wichita, Kansas. The supposed purpose of the loan was to purchase a 2020 Ram 3500 truck. Cooke admits that as part of the loan documents he submitted a fake pay stub in the name of R.H. that showed R.H. worked for a trucking company in Wichita, Kansas and lived in Wichita, Kansas. Cooke also submitted a fraudulent auto insurance card in R.H.'s name.

Cooke admits that he traveled from New York to Kansas to obtain the proceeds from the fraudulent loan. Cooke admits that in an attempt to obtain the proceeds of the loan he presented a Minnesota driver's license with the name and information of R.H., but with a picture of Cooke. Cooke was arrested by he Wichita Police Department and charged with identity theft, making false writing, and forgery/counterfeiting before obtained the loan proceeds.

### *Belgrade State Bank*

On or about May 17, 2023, Cooke admits he completed an online loan application through Belgrade State Bank's website using the name and personal information of identity theft victim D.F. The requested loan amount was for $70,000 to purchase a 2021 Dodge Ram truck. Cooke admits that he submitted fake pay stubs showing that D.F. worked for a construction company in Kansas City, Missouri and lived in Cap Girardeau, Missouri. Cooke also admits he submitted a fraudulent California driver's license with the loan application with a picture of Cooke, but the personal information of D.F. Cooke went to Belgrade State Bank in Potosi, Missouri on May 23, 2023, to obtain the proceeds of the loan and was arrested by personnel from the Potosi Police Department after the bank's loan officer noticed inconsistencies between information provided by Cooke in the loan application and information from a credit report for D.F.

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range

---

[1] The identity T.M. used in the attempted automobile loan at Multipli Credit Union is different than Cooke's associate that is identified as T.M.

4

under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3. The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Information as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3 in calculating the offense level for the charge to which he is pleading guilty.

**5. Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the Information charging him with bank fraud, the maximum penalty the Court may impose is not more than 30 years of imprisonment, a $1,000,000 fine, five years of supervised release, an order of restitution, and a $100 mandatory special assessment, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

> a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";
>
> b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;
>
> c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to five years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;
>
> d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to three years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed five

5

years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

   e.   the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

   f.   any sentence of imprisonment imposed by the Court will not allow for parole;

   g.   the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

   h.   the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court;

7. **Government's Agreements.**   Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the defendant's scheme to obtain fraudulent loans using stolen identities, for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The

6

defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable

Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

**10.** **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1(a)(1), which provides for a base offense level of seven;

    c. The parties agree that the loss amount was greater than $250,000 but less than $550,000 and therefore there is a 12-level increase in the offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(G);

    d. The parties acknowledge a 2-level enhancement is applicable pursuant to U.S.S.G. § 2B1.1(b)(10) because the defendant participated in relocating the fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials;

    e. The parties agree a 2-level enhancement is applicable pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(i) because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification ;

    f. There may or may not be other enhancements or reductions applicable under the Guidelines. The parties are free to argue as to the applicability of any additional enhancements or reductions under the Guidelines, and agree to be bound by the Court's determination as to the applicability of any other enhancements or reductions under the Guidelines.

    g. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will either file a written motion or make an oral motion with the Court to that effect unless the defendant (1) fails to abide by all the terms and conditions of this plea agreement

and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility.

       h.    There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

       i.    The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph nine of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

       j.    The United States agrees not to seek an upward departure from the Guidelines range. The defendant may request any sentence, including a sentence below the applicable Guidelines range. This agreement by the parties is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

       k.    The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

       l.    The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11.**   <u>**Effect of Non-Agreement on Guidelines Applications.**</u>  The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its

9

subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

   a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b. comment on the evidence supporting the charge in the information;

   c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

   d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. the right to plead not guilty and to persist in a plea of not guilty;

   b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against him;

e. the right to compel or subpoena witnesses to appear on his behalf; and

f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

 a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

 b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

11

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

   a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with all other uncharged related criminal activity.

   b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

   c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

   d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

   e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

   f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

   g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

   h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of

12

the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

        i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain

bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20. Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**21. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22. Standard of Interpretation.** The parties agree that, unless the constitutional

14

implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Jeffrey P. Ray
Acting United States Attorney

Dated: 5-28-2025

Bradley Cooper
Special Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 5/28/25

Theo D. Cooke
Defendant

I am defendant Theo Cooke's attorney. I have fully explained his rights with respect to the offense charged in the Information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Theo Cooke's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 5/28/25

Marc Ermine
Attorney for Defendant

15